TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
AGUSTIN D. OROZCO (Cal. Bar No. 271852)
Assistant United States Attorney
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2216
     Facsimile: (213) 894-0141
     E-mail:    agustin.d.orozco@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

10/20/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR   2:21-cr-00494-MCS |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MATTHEW ELSTEIN |
| v. | |
| MATTHEW CHARLES ELSTEIN, | |
| Defendant. | |

1.   This constitutes the plea agreement between MATTHEW CHARLES ELSTEIN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

     a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the

form attached to this agreement as Attachment A or a substantially similar form, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Make restitution in accordance with the Court's order.

i.   Authorize the USAO to obtain a credit report immediately upon defendant's entry of a guilty plea.

j.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

k.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

1    usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

2    Litigation Section at 300 N. Los Angeles St., Suite 7516, Los

3    Angeles, CA 90012.

4            1.   Defendant understands that the government obtained

5    additional material in this investigation that defendant has not been

6    shown.  In exchange for the government's obligations under this

7    agreement, defendant gives up any right he may have had to review the

8    additional material, regardless of whether it is arguably exculpatory

9    or inculpatory, and further agrees to waive any argument that the

10   withholding of this material caused defendant's plea to be not

11   knowing or involuntary.  The government agrees not to use at

12   sentencing any of the withheld material without providing it to

13   defendant.

14                        THE USAO'S OBLIGATIONS

15       3.   The USAO agrees to:

16           a.   Not contest facts agreed to in this agreement.

17           b.   Abide by all agreements regarding sentencing contained

18   in this agreement.

19           c.   At the time of sentencing, provided that defendant

20   demonstrates an acceptance of responsibility for the offense up to

21   and including the time of sentencing, recommend a two-level reduction

22   in the applicable Sentencing Guidelines offense level, pursuant to

23   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

24   additional one-level reduction if available under that section.

25           d.   Except for criminal tax violations (including

26   conspiracy to commit such violations chargeable under 18 U.S.C.

27   § 371), not further criminally prosecute defendant for violations of

28   18 U.S.C. § 1028A arising out of defendant's conduct described in the

                                    3

1   agreed-to factual basis set forth in Attachment B.  Defendant

2   understands that the USAO is free to criminally prosecute defendant

3   for any other unlawful past conduct or any unlawful conduct that

4   occurs after the date of this agreement.  Defendant agrees that at

5   the time of sentencing the Court may consider the uncharged conduct

6   in determining the applicable Sentencing Guidelines range, the

7   propriety and extent of any departure from that range, and the

8   sentence to be imposed after consideration of the Sentencing

9   Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

10   <u>NATURE OF THE OFFENSE</u>

11       4.   Defendant understands that for defendant to be guilty of

12   the crime charged in the information, that is, wire fraud, in

13   violation of Title 18, United States Code, Section 1343, the

14   following must be true: (1) the defendant knowingly participated in a

15   scheme or plan to defraud, or a scheme or plan for obtaining money or

16   property by means of false or fraudulent pretenses, representations,

17   promises, or omitted facts; (2) the statements made or facts omitted

18   as part of the scheme were material; that is, they had a natural

19   tendency to influence, or were capable of influencing, a person to

20   part with money or property; (3) the defendant acted with the intent

21   to defraud, that is, the intent to deceive or cheat; and (4) the

22   defendant used, or caused to be used, an international or interstate

23   wire communication to carry out or attempt to carry out an essential

24   part of the scheme.

25   <u>PENALTIES AND RESTITUTION</u>

26       5.   Defendant understands that the statutory maximum sentence

27   that the Court can impose for a violation of Title 18, United States

28   Code, Section 1343, is: 20 years' imprisonment; a 3-year period of

supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.  The parties currently believe that the applicable amount of restitution is approximately $254,354, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.    Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts set forth in Attachment B to this agreement, and agree that this statement of facts is

6

sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12, but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] |
| Specific Offense Characteristics: | | |
| Loss of More Than $250,000 but Less Than $550,000 | +12 | [U.S.S.G. § 2B1.1(b)(1)(G)] |
| Sophisticated Means | +2 | [U.S.S.G. § 2B1.1(b)(10)] |
| Adjustments: | | |
| Abuse of Trust/ Use of Special Skill | +2 | [U.S.S.G. § 3B1.3] |

7

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15. Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.   The right to persist in a plea of not guilty.

     b.   The right to a speedy and public trial by jury.

     c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

     d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.   The right to confront and cross-examine witnesses against defendant.

     f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF STATUTE OF LIMITATIONS</u>

16.   Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offense to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offense to which defendant is pleading guilty because of the expiration of the statute of limitations for that offense prior to the filing of the information alleging that offense; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offense to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

<u>WAIVER OF APPEAL OF CONVICTION</u>

17.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support

defendant's plea of guilty.

<u>WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

18.   Defendant gives up the right to appeal all of the

following: (a) the procedures and calculations used to determine and

impose any portion of the sentence; (b) the term of imprisonment

imposed by the Court, including, to the extent permitted by law, the

constitutionality or legality of defendant's sentence, provided it is

within the statutory maximum; (c) the fine imposed by the Court,

provided it is within the statutory maximum; (d) the amount and terms

of any restitution order, provided it requires payment of no more

than $254,354; (e) the term of probation or supervised release

imposed by the Court, provided it is within the statutory maximum;

and (f) any of the following conditions of probation or supervised

release imposed by the Court: the conditions set forth in Second

Amended General Order 20-04 of this Court; and the drug testing

conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

19.   Defendant also gives up any right to bring a post-

conviction collateral attack on the conviction or sentence, including

any order of restitution, except a post-conviction collateral attack

based on a claim of ineffective assistance of counsel, a claim of

newly discovered evidence, or an explicitly retroactive change in the

applicable Sentencing Guidelines, sentencing statutes, or statutes of

conviction.  Defendant understands that this waiver includes, but is

not limited to, arguments that the statute to which defendant is

pleading guilty is unconstitutional, and any and all claims that the

statement of facts provided herein is insufficient to support

defendant's plea of guilty.

20.   This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

21.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

23.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

24.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

25.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits

both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

14

1     PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        30.   The parties agree that this agreement will be considered

3  part of the record of defendant's guilty plea hearing as if the

4  entire agreement had been read into the record of the proceeding.

5  AGREED AND ACCEPTED

6  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
7  CALIFORNIA

8  TRACY L. WILKISON
   Acting United States Attorney

9                                            10/19/2021

10 _____          _____
   AGUSTIN D. OROZCO                        Date
11 Assistant United States Attorney

12 _____          10/17/21
   MATTHEW ELSTEIN                          Date
13 Defendant

14 _____          10/18/2021
   CANDICE L. FIELDS                        Date
15 Attorney for Defendant
   MATTHEW ELSTEIN

16

17

18

19

20

21

22

23

24

25

26

27

28

                              15

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     ___10/17/21_____
MATTHEW ELSTEIN                      Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Matthew Elstein's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors

16

set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          10/18/2021
CANDICE L. FIELDS                          Date
Attorney for Defendant
MATTHEW ELSTEIN

17

# ATTACHMENT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1343: Wire Fraud] |
| MATTHEW CHARLES ELSTEIN, | |
| Defendant. | |

The Acting United States Attorney charges:

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant MATTHEW CHARLES ELSTEIN was a resident of Los Angeles County, within the Central District of California.

2.   Between on or about December 12, 1994 and on or about March 1, 2019, defendant ELSTEIN was an attorney licensed by the California State Bar.

B.   THE SCHEME TO DEFRAUD

3.   Beginning on an unknown date, but no later than on or about September 30, 2014, and continuing through at least on or about July 11, 2018, in Los Angeles County, within the Central District of

California, and elsewhere, defendant ELSTEIN, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud defendant ELSTEIN's legal clients as to material matters, and to obtain money and property from defendant ELSTEIN's legal clients by means of material false and fraudulent pretenses, representations, and promises and the concealment of material facts.

C.    THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD

4.    The scheme to defraud operated, in substance, in the following manner:

a.    Individuals and businesses would retain defendant ELSTEIN as their attorney to represent them in legal matters.

b.    Defendant ELSTEIN would inform his clients that he filed, on the client's behalf, complaints, motions and other pleadings in court when, in fact, defendant ELSTEIN had filed no such complaints, motions and pleadings.

c.    Defendant ELSTEIN would solicit from his clients payment for legal services that he never rendered and for expenses he never incurred.

d.    Defendant ELSTEIN would provide fraudulent court orders, settlement agreements, and other legal documents to defendant ELSTEIN's clients representing that defendant ELSTEIN had obtained favorable legal resolutions for his clients when, in fact, no such favorable legal resolutions had been reached.

D.    THE USE OF THE WIRES

5.    On or about June 7, 2016, in Los Angeles County, within the Central District of California, defendant ELSTEIN, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of a wire communication in interstate and

1  foreign commerce, namely, defendant ELSTEIN, using his email account

2  matt.elstein@gmail.com, sent an email to Victim C.S.S. in which

3  defendant ELSTEIN instructed Victim C.S.S. to wire $3,500 to

4  defendant ELSTEIN for "deposition related expenses," when, in fact,

5  no such deposition expenses had been incurred because there was no

6  deposition.

7

8

9                          TRACY L. WILKISON
                           Acting United States Attorney
10

11

12                         SCOTT M. GARRINGER
                           Assistant United States Attorney
13                         Chief, Criminal Division

14                         MACK E. JENKINS
                           Assistant United States Attorney
15                         Chief, Public Corruption & Civil
                           Rights Section
16
                           DANIEL J. O'BRIEN
17                         Assistant United States Attorney
                           Deputy Chief, Public Corruption &
18                         Civil Rights Section

19                         AGUSTIN D. OROZCO
                           Assistant United States Attorney
20                         Public Corruption & Civil Rights
                           Section
21

22

23

24

25

26

27

28

3

# ATTACHMENT  B

**Attachment B**

**Factual Basis**

Beginning in or around September 2014, MATTHEW CHARLES ELSTEIN ("defendant") engaged in a scheme to defraud defendant's legal clients by claiming that he filed, on the client's behalf, complaints, motions and other pleadings in court when, in fact, defendant knew no such complaints, motions and pleadings had been filed.  Defendant also claimed he had obtained favorable legal resolutions for his clients when, in fact, defendant had not obtained favorable resolutions and, in many cases, had never initiated a legal action.

Defendant became a licensed member of the California State Bar in December 1994.  In or around May 2016, defendant relocated to Los Angeles, California, within the Central District of California.  From then on, defendant practiced law in Los Angeles and represented the victims discussed below there.  He was ordered inactive by the State Bar in March 2019.

Victims S.F., C.S.S., and Company A

In or around June 2015, Company A retained defendant to file a lawsuit against Company B regarding a contract dispute. S.F. and C.S.S. were the principals of Company A.  During defendant's representation of Company A, he communicated with S.F. and C.S.S. using wire communications, namely, phone calls and email.

On June 10, 2015, defendant emailed Company A that he needed a retainer of $50,000 wired to him that day.  Instead of providing Company A with the information for his law firm's

Deft's Initials ___ MCE

1

trust account, however, defendant included the information for defendant's personal bank account.  That same day, Company A wired $50,000 to defendant's personal bank account.

Shortly thereafter, defendant sent a letter to a third party, Company C, informing Company C of Company A's intention to sue Company B in federal court.  Company A, through defendant, also requested that Company C segregate money owed to Company B, as it would be owed to Company A if Company A were to be successful in a legal action against Company B.  Company C, represented by I.F., subsequently filed an interpleader action in the United States District Court for the Southern District of California (the "interpleader case") in order to have Company A and Company B sort out competing claims for the money.

In addition to the Interpleader, which addressed the limited issue of how to distribute revenue streams from Company C between Companies A and B, defendant agreed to pursue Company A's other substantive claims against Company B by filing a federal action on their behalf in the Northern District of California.  Defendant, however, never filed such a lawsuit. Instead, he misled Company A into believing he had filed such a case, and billed Company A for work he did not perform.

On July 6, 2015, defendant emailed Company A falsely stating that he filed the case against Company B in the Northern District (the "Northern District Case") prior to the Fourth of July holiday.  Defendant communicated several lies to Company A about why the Northern District Case could not be found on Pacer, including that the case was under seal because the United

Deft's Initials  _MCE_

2

States Department of Justice ("DOJ") was investigating the owner of Company B.

From then on, defendant continued to make false representations to induce payment from Company A regarding the fake Northern District case.  For example, on October 10, 2015, defendant told Company A that he had filed a Second Amended Complaint in the Northern District Case.  In an attempt to cover for his misrepresentation, on March 16, 2018, defendant emailed C.S.S. a fraudulent second amended complaint with a fictious case number and forged Pacer information.

On December 22, 2015 and March 10, 2016, defendant requested a total of $6,700 for "process server costs and document costs" related to a motion for summary judgment as well as "filing and copying expenses" in the Northern District Case. On June 7, 2016, defendant, for the purpose of executing his scheme to defraud, transmitted and caused the transmission of a wire communication in interstate and foreign commerce, namely, defendant used his email account matt.elstein@gmail.com to instruct C.S.S. to wire $3,500 to defendant for "deposition related expenses."  Since the Northern District Case was fabricated by defendant, there was no motion for summary judgment, defendant did not incur filing and copying expenses, and there were no depositions or deposition related expenses. Based on defendant's representations, however, Company A wired the money to defendant's personal bank account.

In addition, defendant charged Company A for travel related to other clients/matters and had S.F. and C.S.S. travel to

Deft's Initials _McE_

3

depositions that defendant had fabricated to carry out his scheme.

During the course of the fraudulent scheme, defendant communicated to Company A that the defendants in the Northern District Case defaulted on the suit against them and that Company A had won a $52 million judgment.  According to defendant, Company A had to wait for the case to be unsealed for the judgment to be released.

On June 17, 2016, defendant emailed Company A a forged court order purportedly signed by the Honorable Richard Seeborg, United States District Court Judge for the Northern District of California.  The order was titled, "Order Re: Hearing on Plaintiff's Motion for Entry of Judgment Against All Defendants."  The fake order noted that it was "sealed" and contained a false case name, docket number, and Pacer markings. The order stated that, "given the complexity of the claims for relief asserted by Plaintiffs, the number of parties, and what appear to be overlapping claims of damages, the Court is required to 'conduct an accounting' and make specific factual findings in support of the judgment."  The order went on to order Plaintiffs to file "a detailed accounting of all damages" by July 1, 2016.

On October 3, 2016, defendant emailed Company A a second falsified court order titled, "Interim Partial Judgment." Again, the order purported to be signed by Judge Seeborg, noted that it was "sealed," and contained a fake case number and false Pacer markings.  The order stated that the "Plaintiff shall take

Deft's Initials MG

4

judgement against all Defendants, jointly and severally, in the amount of $2.5 million ($2,500,000)."

Because defendant's scheme involved the Northern District Case being improperly under seal due to DOJ's supposed investigation of the owner of Company B, defendant informed Company A that it could collect money controlled by DOJ.  On August 22, 2017, defendant emailed Company A two forged documents: (1) a "Process Receipt and Return" form with the United States Marshals Service ("USMS"), which defendant claimed to be necessary as part of the process to collect on the "Interim Judgment/Enforcement of Temporary Restraining Order"; and (2) a "Record of Collections" from the USMS demonstrating the USMS had collected $638,884.17 from parties in the Northern District Case.

On September 21, 2017, defendant sent Company A a fake settlement agreement between Company A and the United States Attorney's Office for the Eastern District of California (the "U.S. Attorney's Office"), with the forged signatures of the then Interim United States Attorney for the Eastern District of California and the then Acting Assistant Attorney General of DOJ's Criminal Division.  Under the agreement, the government agreed (1) it would not object to the unsealing of the Northern District Case; (2) pay Company A $4 million from the "Court of Claims Recovery Fund" in settlement of all claims and potential claims by Company A; (3) cease all action which may interfere with Company A's prosecution and collection of sum in the interpleader case and the Northern District Case; and (4)

Deft's Initials MCE

disgorge all sums held by the USMS (no less than $630,000) collected as part of the sealed judgment in the Northern District Case.

Defendant continued to charge Company A for his fraudulent efforts to obtain the funds from the government.  In November 2017, defendant charged Company A to prepare and file a Supreme Court petition.  On December 28, 2017, defendant purported to follow up by sending a demand letter requesting the government unseal the case and pay his clients the amount due.

In January 2018, Company A reached out to the U.S. Attorney's Office to authenticate the settlement agreement and discovered that the agreement was a forgery.

Throughout the course of defendant's misrepresentations, Company A paid $234,000 in fraudulently procured legal fees and expenses.

Victims I.F. and J.F.

In or around 2012, a law firm, Firm A, filed two lawsuits in the state of Washington (the "Washington Lawsuits") against I.F., J.F., and two of their companies that provide debt settlement services (the "Debt Settlement Companies").  I.F., J.F., and the Debt Settlement Companies later hired defendant to substitute into the actions.  During defendant's representation of I.F., J.F., and the Debt Settlement Companies, defendant communicated with them using wire communications, namely, phone calls and email.

On September 30, 2014, defendant sent a retainer agreement to I.F. noting that he had been formally retained by I.F., J.F.,

Deft's Initials  M(F

6

and the Debt Settlement Companies to represent them in the Washington Lawsuits.  The agreement noted that I.F. needed to pay an advance of $10,000.  Defendant provided I.F. with the information for defendant's personal bank account, but falsely represented that it was the trust account for his law firm.

In 2015, Defendant told I.F. that he would file a federal case against Firm A in the Western District of Washington.  On April 13, 2015, defendant prepared a purported application to appear *pro hac vice* in United States District Court for the Western District of Washington.  The caption contained the fake case name for the lawsuit that defendant represented to I.F. he would file, but never did.  On April 23, 2015, defendant sent a revised retainer agreement to I.F., which they both signed.  This revised retainer agreement specifically listed the fake federal case (hereinafter referred to as the "Washington Federal Case") along with the Washington Lawsuits as the basis for the representation.  It added that defendant's representation in the Washington Federal Case would not begin until I.F. paid a "further advance in the amount of $3,500 … deposited in [defendant's law firm] Client Trust Account[.]," which was actually defendant's personal bank account.

On May 15, 2015, defendant represented to I.F. that defendant filed a 24-page, 10-count complaint in the Washington Federal Case.  He later provided I.F. with a fraudulent face page and the second page of the complaint.  The document looked like it had been filed, but, in actuality, contained fake Pacer markings with a fraudulent case number.

Deft's Initials  M(F

7

Defendant also fabricated depositions in the Washington Federal Case. Specifically, he told I.F. that he noticed two depositions on September 21, 2015 and a third deposition on September 22, 2015 in Seattle, Washington. I.F. and J.F traveled to Seattle for the depositions. Because these depositions were fake, no one appeared for the deposition. Nonetheless, defendant had a court reporter present and made a formal record of the nonappearances. Defendant also billed I.F. for attending the fake depositions and his travel expenses.

When defendant changed law firms in approximately November 2015, he represented to I.F. that he was working on the Federal Case and continued to bill I.F. for work he was not doing.

On or about March 2016, defendant represented to I.F. that the defendants in the Washington Federal Case were in default of their discovery obligations and that the court ultimately would enter a default judgment. Defendant's billing entries during that time demonstrate that he was billing I.F. for work on motions for default and sanctions, when, in fact, he was not working on those motions.

On June 12, 2016, when I.F. questioned why there was an issue in locating the Washington Federal Case on Pacer, defendant emailed I.F. to tell him that (1) the case had been docketed by the district court in May 2015; (2) he had no information as to why it did not appear on Pacer; (3) the complaint was filed and contained an electronic watermark; (4) "I have done everything you instructed and as I represented";

Deft's Initials _MCF_

and (5) that he would call the court the next day and speak directly to the ECF docketing clerk.

On August 8, 2016, defendant forwarded to I.F. a fake email communication between defendant and a person he claimed to be a clerk at the United States District Court for the Western District of Washington.  The subject contained the fake case name and number for the Washington Federal Case.  The email had a fake name and email address for the clerk.  In the fake email, the clerk said that the "Court intends to grant the requests for entry of default without the need for a hearing[.]"

While defendant was misleading I.F. and the Debt Settlement Companies about the existence of the Washington Federal Case, he also misrepresented to his law firm that he was withdrawing from representation in the Washington Lawsuits.  In November of 2016, defendant provided his law firm with fake emails to I.F., J.F. and the Debt Settlement Companies.  In the emails, defendant noted defendant's intent to withdraw from the Washington Lawsuits and demanded that they pay outstanding court reporter fees.  The emails, however, were sent to fake email addresses created by defendant.  Defendant also provided his law firm with a fraudulent substitution of attorney form, purportedly filed and signed by I.F.  However, I.F. had never seen the document.

By March of 2017, defendant had begun working at his third law firm since agreeing to represent I.F., J.F. and the Debt Settlement Companies.

Defendant continued to bill I.F. for work he was not actually doing on the fake Washington Federal Case well into

Deft's Initials MCE

9

October of 2017.  On October 12, 2017, defendant emailed I.F. to inform him that the final briefing for the judgment in the Washington Federal Case was due on October 20, 2017.

In January 2018, defendant falsely represented to I.F. that he had obtained a $4,250,000 judgment in favor of I.F. and the Debt Settlement Companies in the Washington Federal Case. Around July 2018, I.F. wanted to personally travel to Seattle to collect on this judgment.  In advance of that trip, defendant handed I.F. a copy of what defendant represented to be the judgment in the Washington Federal Case.  The fraudulent order contained a forged electronic signature of the Honorable James L. Robart of the United States District Court, Western District of Washington.

On July 11, 2018, I.F. traveled to the district court to collect his judgment.  On that day, I.F. realized defendant's deceit.  The clerk could not find the case number.  A Senior Inspector from the USMS's office confirmed it looked suspicious and then checked with Judge Robart who confirmed that he had never heard of the Federal Case.

Throughout the course of defendant's misrepresentations, I.F. paid $20,354.30 in fraudulent retainer and legal fees directly into defendant's personal bank account.

<u>Victim Company D</u>

Company D consists of three insurance companies.  In or around December 2015, Company E sued Company D in United States District Court for the Southern District of California.  Shortly thereafter, Company D retained defendant to represent it.

Deft's Initials MCF

During defendant's representation of Company D, defendant communicated with Company D's representatives using wire communications, namely, phone calls and email.

During a call on December 17, 2015, with representatives of Company D, defendant discussed with representatives of Company D drafting a motion to dismiss. Defendant subsequently misled Company D about the deadline for filing the motion, his filing of the motion, and the events that were transpiring in the case.

On May 26, 2016, defendant lied to Company D in an email, conveying that the court clerk wanted to have oral argument on the motion to dismiss and that the court set a filing deadline of June 3, 2016 and a hearing date of July 11, 2016. Defendant added that he would draft the motion over the Memorial Day weekend.

Between June 2016 and August 2016, defendant and Company D exchanged numerous emails in which defendant claimed that the judge continued to move the filing deadline and the hearing date for the motion to dismiss. By email on August 16, 2016, defendant represented that the motion would be filed by the new deadline of August 18, 2016, and that plaintiffs in the case would be served personally. Later that day, defendant sent a draft of the motion to Company D. The draft was approved with changes and sent to defendant. Defendant told Company D that he would file it "ASAP." Defendant never did. Billing records demonstrate that defendant claimed to have worked on the motion to dismiss that was never filed between June 2016 and August 2016.

Deft's Initials _MCE_

11

On February 28, 2017, a representative of Company D emailed defendant to ask if the motion to dismiss was filed in August. Defendant responded that the court had converted the motion to dismiss into a motion for summary judgment. Meanwhile, in emails on February 28, 2017 and March 1, 2017, defendant represented to a different Company D employee that he was working on a draft motion for summary judgment.

In reality, the court was not continuously moving the motion deadline, considering a motion to dismiss, or continuing the hearing on the motion. The court never converted a motion to dismiss into a motion for summary judgment. Instead, defendant missed discovery deadlines, failed to timely designate an expert on behalf of Company D, and never filed a motion to dismiss.

On November 22, 2016, Company E filed its motion for summary judgment. Defendant never told Company D about the filing. Instead, in order to have Company E agree to an extension on Company D's opposition in order to accommodate defendant's vacation in France, defendant agreed that Company D would not file a cross motion. Defendant then entered into settlement negotiations with Company E for $275,000, without receiving prior authorization from Company D to do so. Defendant billed Company D a total of $104,500.50 throughout defendant's representation of Company D.

In total, defendant's fraudulent conduct resulted in losses of at least $358,855 by his victims.

Deft's Initials ___